## COLUMBIA MILL COMPANY v. ALCORN.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF PENNSYLVANIA.

No. 115. Submitted November 24, 1893. — Decided December 4, 1893

A person cannot acquire a right to the exclusive use of the word " Columbia" as a trade-mark.

To acquire a right to the exclusive use of a name, device, or symbol as a trade-mark, it must appear that it was adopted for the purpose of identifying the origin or ownership of the article to which it is attached, or

that such trade-mark points distinctively to the origin, manufacture, or ownership of the article on which it is stamped, and is designed to indicate the owner or producer of the commodity, and to distinguish it from like articles manufactured by others.

If a device, mark, or symbol is adopted or placed upon an article for the purpose of identifying its class, grade, style, or quality, or for any purpose other than a reference to or indication of its ownership, it cannot be sustained as a valid trade-mark.

The exclusive right to the use of a mark or device claimed as a trade-mark is founded on priority of appropriation, and it must appear that the claimant of it was the first to use or employ it on like articles of production.

A trade-mark cannot consist of words in common use as designating locality, section, or region of country.

In the case of an alleged violation of a valid trade-mark, the similarity of brands must be such as to mislead ordinary observers, in order to justify a restraining injunction.

In equity to restrain an alleged violation of a trade-mark. Decree dismissing the bill, from which complainant appealed. The case is stated in the opinion.

*Mr. P. H. Gunckel,* for appellant, submitted on his brief.

No appearance for appellee.

MR. JUSTICE JACKSON delivered the opinion of the court.

The complainant, a corporation of Minnesota, engaged in the manufacture of flour at Minneapolis in that State, brought this bill to restrain the defendants from using the word "Columbia" in a brand placed on flour sold by them. The complainant alleged that it had selected this word as a fanciful and arbitrary name or trade-mark at least five years prior to the filing of the bill, for the use and purpose of identifying a certain quality of flour of its own manufacture. The complainant's brand, printed on sacks and stencilled on the heads of barrels, was in the form of a circle, in the upper arc of which were the words "Columbia Mill Co.," and in the lower arc, "Minneapolis, Minn." These words were printed in blue. On a horizontal line, and in the middle of the circle, was the

alleged trade-mark, "Columbia," in large letters, which was printed in red. Below this word, on separate lines and in smaller letters, were the words "Roller Process" and "Patent." The bill also .alleged that the brand of flour on · which the trade-mark was affixed obtained an extensive sale, and became generally known throughout the country, but that in the years 1887 and 1888 purchasers and consumers thereof were misled and deceived by the defendants, who put up in similar packages an imitation of the flour manufactured by the complainant, which was thus sold by them under the name, brand, and trade-mark "Columbia." It was further alleged that the flour thus sold, although inferior 'in quality to the complainant's article, caused a great diminution in the business of the complainant. The bill prayed for an injunction and an accounting of the profits on all the flour sold by the defendants under the brand of "Columbia."

The defendants answered that they carried on in Philadelphia a general business of buying outright, and of selling on commission, flour consigned to them, and that in accordance with the custom of the trade they had their own brands put on the sacks and barrels of flour handled by them. They admit that one of the brands so used was in the form of a circle, having the words "High Grade" in the upper arc, and under those words "No. 1;" then on the next line "Hard Wheat," under which, in large letters, was the word "Columbia," and below that, in letters of the same size, was the word "Patent," and the figures "196" in another line below. On the lower arc of the circle were the words "Minneapolis, Minn." The answer stated that the whole of the brand was printed in black ink. The defendants further averred that "they have never sold any flour not manufactured by · the complainant as being the flour of the complainant. That they have not knowingly or actually used, or caused to be used, any brand for flour in imitation of any brand used by the complainant, nor have they ever sold any 'flour branded in 'imitation of complainant's flour. That they have never come in competition with complainant's flour, nor has any one ever purchased the respondents' flour believing it to be of the

complainant's manufacture. That they deny any claim on the part of the complainant to any right to the name 'Columbia' as a trade-mark, averring that the same was used by these respondents and other parties long before the said complainant commenced to use it, and that other mills beside the complainant's manufacture and sell flour branded 'Columbia.'"

Upon the pleadings and proofs, the court below held that the complainant had not established its exclusive right to the use of the word "Columbia," in a brand for flour, and dismissed the bill. From this decree the present appeal is prosecuted.

We are clearly of opinion that there is no error in the judgment of the court below. The general principles of law applicable to trade-marks, and the conditions under which a party may establish an exclusive right to the use of a name or symbol, are well settled by the decisions of this court in the following cases: *Canal Co.* v. *Clark*, 13 Wall. 311; *McLean* v. *Fleming*, 96 U. S. 245; *Manufacturing Co.* v. *Trainer*, 101 U. S. 51; *Goodyear Co.* v. *Goodyear Rubber Co.*, 128 U. S. 598; *Corbin* v. *Gould*, 133 U. S. 308; *Lawrence Mfg. Co.* v. *Tennessee Mfg. Co.*, 138 U. S. 537; *Brown Chemical Co.* v. *Meyer*, 139 U. S. 540.

These cases establish the following general propositions.: (1) That to acquire the right to the exclusive use of a name, device, or symbol, as a trade-mark, it must appear that it was adopted for the purpose of identifying the origin or ownership of the article to which it is attached, or that such trade-mark must point distinctively, either by itself or by association, to the origin, manufacture, or ownership of the article on which it is stamped. It must be designed, as its primary object and purpose, to indicate the owner or producer of the commodity, and to distinguish it from like articles manufactured by others. (2) That if the device, mark, or symbol was adopted or placed upon the article for the purpose of identifying its class, grade, style, or quality, or for any purpose other than a reference to or indication of its ownership, it cannot be sustained as a valid trade-mark. (3) That the exclusive right to the use of the mark or device claimed as a trade-mark is

founded on priority of appropriation; that is to say, the claimant of the trade-mark must have been the first to use or employ the same on like articles of production. (4) Such trade-mark cannot consist of words in common use as designating locality, section, or region of country.

The alleged trade-mark cannot, for many reasons, be made the subject of an exclusive private property. First, because it is clearly shown from the proof in the cause that the word "Columbia," as a brand upon sacks or barrels of flour, was in use long before its appropriation by the complainant.

It is established by the evidence that as early as 1865 or 1866 a brand was made for Lee & Hollingsworth, owners of the Columbia Mills of Brooklyn, New York, which was placed upon their sacks or barrels of flour, in the form of a circle. The upper part of the circle was formed of the words "Columbia Mills." In the middle of the circle, in large letters, was the word "Columbia," and above and below this word were placed, respectively, "196" and "XXX." In the lower arc of the circle were the words "Family Flour." The whole brand was printed in black, and was encompassed by a black circular border.

It is further shown by the proof that the word "Columbia," before its adoption by the complainant, was used by the Columbia Mill Company of Columbia, Brown County, Dakota; by the Columbia Elevator and Grain Mills of Providence, Rhode Island; by the Columbia Mill Company of Oakland, Indiana; and by S. S. Sprague & Company of Providence, Rhode Island. The word "Columbia" having been thus previously appropriated and used upon barrels and sacks of flour, was not subject to exclusive appropriation thereafter by the complainant, so as to make it a valid trade-mark such as the law will recognize and protect.

Second. The word "Columbia" is not the subject of exclusive appropriation under the general rule that the word or words, in common use as designating locality, or section of a country, cannot be appropriated by any one as his exclusive trade-mark.

In Canal Co. v. Clark, 13 Wall. 311, 321, it was held that the

word Lackawanna, which is the name of a region of country in Pennsylvania, could not be, in combination with the word coal, constituted a trade-mark, because every one who mined coal in the valley of Lackawanna had a right to represent his coal as Lackawanna coal. Speaking for the court, Mr. Justice Strong said : " The word ' Lackawanna ' was not devised by the complainants. They found it a settled and known appellative of the district in which their coal deposits and those of others were situated. At the time they began to use it, it was a recognized description of a region, and of course of the earths and minerals in the region. . . . It must be then considered as sound doctrine that no one can apply the name of a district of country to a well-known article of commerce, and obtain thereby such an exclusive right to the application as to prevent others inhabiting the district, or dealing in similar articles coming from the district, from truthfully using the same designation."

In *Koehler* v. *Sanders*, 122 N. Y. 65, it was held that the word " international" could not be exclusively appropriated by any one as a part of a trade name, because the word was a generic term in common use, and in its nature descriptive of a business to which it pertains, rather than to the origin or proprietorship of the article to which it might be attached.

In *Connell* v. *Reed*, 128 Mass. 477, it was held that the words " East Indian," in connection with " Remedy," placed upon bottles of medicine, were not the subject of a trade-mark. In that case Mr. Chief Justice Gray, speaking for the court, said : " that it was at least doubtful whether words in common use as designating a vast region of country and its products can be appropriated by any one as his exclusive trade-mark, separately from his own, or some other name, in which he has a peculiar right."

In *Glendon Iron Co.* v. *Uhler*, 75 Penn. St. 467, a corporation adopted the trade-mark " Glendon," which was placed upon their iron. The place where their furnace was located was afterwards erected into a borough by the name of Glendon. Another company, engaged in business in the same place, afterwards used the word " Glendon " on their iron. It

was held that the second company had a right so to do. The ruling of the court was rested on the ground that the name "Glendon" was common to the whole world, and that the previous appropriation of it by the complainant did not prevent any other manufacturer of pig iron, in its limits, from using the same word.

In *Laughman's Appeal*, 128 Penn. St. 1, it was held that the word "Sonman," being the name of a large boundary of land, containing a number of separate private estates, owned by a number of different persons engaged in the business of mining and shipping coal, could not be adopted as a trade name by one party to the exclusion of others.

In the leading case of *Amoskeag Mfg. Co.* v. *Spear*, 2 Sandf. 599, it is laid down that no one has a right to appropriate a sign or symbol which, from the nature of the fact it is used to signify, others may employ with equal truth, and, therefore, have an equal right to employ for the same purpose.

It is upon these principles that a person may put his own name upon his own goods, notwithstanding another person of the same name may, in that name, manufacture and sell the same or similar articles. *Brown Chemical Co.* v. *Meyer*, 139 U. S. 540.

The appellant was no more entitled to the exclusive use of the word "Columbia" as a trade-mark than he would have been to the use of the word "America," or "United States," or "Minnesota," or "Minneapolis." These merely geographical names cannot be appropriated and made the subject of an exclusive property. They do not, in and of themselves, indicate anything in the nature of origin, manufacture, or ownership; and in the present case the word "Columbia" gives no information on the subject of origin, production, or ownership. The upper part of the brand or label of the trade-mark discloses the full name of the complainant as the manufacturer of the article, and is in no way supplemented or made clearer by the word "Columbia." It can no more be said that it was intended to designate origin or ownership than to denote the quality of the flour on which the brand was placed, and the proof tends strongly to show that the whole label was

intended to indicate the quality, or class, or character of the flour, as being made of spring wheat instead of winter wheat.

It is further shown by the proof that for the particular grade of flour, on which the brand including the alleged trademark "Columbia" was used, the complainant had at least three other trade names, such as "Golden Rod," "Best," and "Superlative," which were used indiscriminately, and for different sections of the country, with the word "Columbia." The quality and process of manufacture were identically the same, and all made from spring wheat, whether one trade name or the other was used thereon.

It is also shown by the testimony in this case that the flour manufactured from spring wheat, such as that dealt in both by the complainant and the defendants, is never sold or bought simply on the brand, but usually, if not always, by actual sample, and the proof fails to establish that the brand of the appellees was calculated to mislead, or did actually deceive or mislead, any one into supposing that the flour of the complainant was being bought. So it cannot be said that the defendants were personating the complainant's business by using such a description or brand as to lead customers to suppose that they were trading with the appellant. Even in the case of a valid trade-mark, the similarity of brands must be such as to mislead the ordinary observer.

For the foregoing reasons we are clearly of opinion that there was no error in the court below in dismissing the bill, and the same is, accordingly,

*Affirmed.*